No. 14-2295

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY,
ROBERT SHEA, and EMMET WELCH,

Plaintiffs-Appellees,

v.

SUN-TIMES MEDIA, LLC,

Defendant-Appellant,

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

---

**BRIEF OF PLAINTIFFS-APPELLEES**

---

Ronald C. Dahms (#6289304)
Sean C. Starr (#6304070)
Attorneys for Plaintiffs-Appellees
135 South LaSalle Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 609-0060
Facsimile: (312) 541-8991

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: __14-2295_____

Short Caption: __Dahlstrom v. Sun-Times Media, LLC_____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    __Plaintiff-Appellee Scott Dahlstrom, Plaintiff-Appellee Hugh Gallagly, Plaintiff-Appellee Peter Kelly,__

    __Plaintiff-Appellee Robert Shea, and Plaintiff-Appellee Emmet Welch__

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    __Law Offices of Ronald C. Dahms__

    __Law Offices of Sean C. Starr__

(3)   If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

       __N/A__

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

       __N/A__

Attorney's Signature: __s/  Ronald C. Dahms_____     Date: __August 22, 2014_____

Attorney's Printed Name: __Ronald C. Dahms_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes**  ☒   **No**  ◯

Address: __135 South LaSalle Street, Suite 3300_____

        __Chicago, Illinois 60603_____

Phone Number: __312-609-0060_____     Fax Number: __312-541-8991_____

E-Mail Address: __rdahmslaw@@yahoo.com_____

rev. 01/08 AK

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: <u>14-2295</u>

Short Caption: <u>Dahlstrom v. Sun-Times Media, LLC</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>Plaintiff-Appellee Scott Dahlstrom, Plaintiff-Appellee Hugh Gallagly, Plaintiff-Appellee Peter Kelly,</u>

<u>Plaintiff-Appellee Robert Shea, and Plaintiff-Appellee Emmet Welch</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Law Offices of Sean C. Starr</u>

<u>Law Offices of Ronald C. Dahms</u>

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

      <u>N/A</u>

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

      <u>N/A</u>

Attorney's Signature:  <u>s/  Sean C. Starr</u>      Date:  <u>August 22, 2014</u>

Attorney's Printed Name:  <u>Sean C. Starr</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ◯  **No** ✕

Address:  <u>135 South LaSalle Street, Suite 3300</u>

        <u>Chicago, Illinois 60603</u>

Phone Number:  <u>312-609-0060</u>      Fax Number:  <u>312-541-8991</u>

E-Mail Address:  <u>seanstarrlaw@gmail.com</u>

rev. 01/08 AK

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES............................................................................................iii

JURSIDICTIONAL STATEMENT .................................................................................1

COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..............................1

STATEMENT OF THE CASE ........................................................................................2

    A.    The Parties.................................................................................................3

    B.    The Lineup Article.....................................................................................4

    C.    The Sun-Times' Motion to Dismiss ........................................................5

    D.    The District Court's Orders.......................................................................7

SUMMARY OF THE ARGUMENT .................................................................................9

ARGUMENT ..............................................................................................................10

I.    The DPPA's Definition of "Personal Information" Includes the Type of
Information Acquired and Published by the Sun-Times in its Lineup Story ...................11

    A.    A Plain Language Reading of the DPPA Prohibits the Sun-Times'
Acquisition and Publication of the Officers' "Personal Information".................12

    B.    The DPPA's Primary Purpose and Broader Context Prohibit the Sun-
Times' Acquisition and Publication of the Officers' "Personal
Information".......................................................................................................14

    C.    Case Law Supports the Officers' Interpretation of DPPA Protected
"Personal Information".......................................................................................18

    D.    The Sun-Times' Unconsented Disclosure of the of the Officer's Personal
Information is not a Permissible Use Exception under the DPPA ......................21

II.    The DPPA Does Not Violate the First Amendment ......................................................23

    A.    The DPPA is Facially Valid................................................................................24

    B.    The DPPA is Valid as Applied..........................................................................27

III.    Ordering the Sun-Times to Remove the Officers' Information From Its Website Does Not Constitute a Prior Restraint...........................................................33

CONCLUSION ..............................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                    Page

*Alexander v. United States*,

    509 U.S. 544, 550 (1993) .................................................................34

*Am. Civil Liberties Union of Illinois v. Alvarez ("ACLU")*,

    679 F.3d 583 (7th Cir. 2012) ...........................................................32,33

*Ampersand Publ, LLC v. NLRB*,

    702 F.3d 51 (D.C. Cir. 2012) ...........................................................30,32

*Bell v. Keating*,

    697 F.3d 445 (7th Cir. 2012) ...........................................................25,26

*Best v. Berard*,

    2011 U.S. Dist. LEXIS 131572 (N.D. Ill. Nov. 15, 2011) .................20,21

*Blue Canary Corp. v. City of Milwaukee*,

    251 F.3d 1121 (7th Cir. 2001) ..........................................................34

*Buckley v. Valeo*,

    424 U.S. 1 (1976) .............................................................................12,13

*Camara v. Metro North R.R. Co.*,

    596 F.Supp.2d 517 (D. Conn 2009) ................................................ passim

*Caminetti v. United States*,

    242 U.S. 470 (1917) .........................................................................12

*Campbell v. Acuff-Rose Music*,

    510 U.S. 569 (1994) .........................................................................13

*Chaplinsky v. New Hampshire*,

    315 U.S. 568 (1942) .........................................................................29

*City of Erie v. Pap's A.M.*,

    529 U.S. 277 (2000) .........................................................................25

*Denver Area Educ. Telcoms. Consortium v. FCC*,

    518 U.S. 727 (1996) .........................................................................31

*Dersch Energies v. Shell Oil Co.*,

    314 F.3d 846 (7th Cir. 2002) ...........................................................19

*Gertz v. Robert Welch*,

    418 U.S. 323 (1974) .........................................................................28,29,30

*Gordon v. Softech Int'l Inc.*,
    2011 U.S. Dist. LEXIS 46992 (S.D.N.Y. Apr. 28, 2011) ............................ 20

*Graczyk v. West Publ'g Co.*,
    660 F.3d 275 (7th Cir. 2011) ................................................................ 19,23

*Houchins v. KQED, Inc.*,
    438 U.S. 1(1978) ......................................................................................... 24

*Johnson v. West Publ. Corp.*,
    801 F. Supp. 2d 862 (W.D. Mo. 2011) ...................................................... 20

*Manso v. Santamarina & Assocs.*,
    2005 U.S. Dist. LEXIS 7316 (S.D.N.Y. Apr. 26, 2005) ............................ 20

*Maracich v. Spears*,
    133 S. Ct. 2191 (2013) ..................................................................... 16,21,22

*Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*,
    418 U.S. 241 (1974) .................................................................................... 30

*NAACP v. Button*,
    371 U.S. 415, 433 (1963) ........................................................................... 13

*Nat'l. Res. Def. Council v. Muszynski*,
    268 F.3d 91 (2d Cir. 2001) ......................................................................... 20

*Near v. Minn.*,
    283 U.S. 697 (1931) ........................................................................... 27,34,35

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .................................................................................... 29

*Pell v. Procunier*,
    17 U.S. 817 (1974) ...................................................................................... 27

*Reno v. Condon*,
    528 U.S. 141 (2000) .................................................................................... 13

*SEC v. C. M. Joiner Leasing Corp.*,
    320 U.S. 344 (1943) .................................................................................... 20

*Senne v. Vill. Of Palatine*, Ill.,
    695 F.3d 597 (7th Cir. 2012) ............................................................... 7,18,19

*Senne v. Palatine*,
    2013 U.S. Dist. LEXIS 168677 (N.D. Ill. Nov. 27, 2013) .......................... 18

iv

*Smith v. Ill. Secy. of State,*
  2003 U.S. Dist. LEXIS 6767 (N.D. Ill. Apr. 21, 2003) ..............................13

*Snyder v. Phelps,*
  580 F.3d 206 (4th Cir. 2009) .......................................................28

*Travis v. Reno,*
  163 F.3d 1000 (7th Cir. 1998) .......................................................24

*Turner Broad. Sys. v. FCC,*
  512 U.S. 622 (1994) ..................................................................25

*United States v. O'Brien,*
  391 U.S. 367 (1968) ..................................................................25

*United States v. Raines,*
  362 U.S. 17 (1960) ...................................................................26

*United States v. Ron Pair Enters.,*
  489 U.S. 235, 241 (1989) .............................................................12

*United States v. Salerno,*
  481 U.S. 739 (1987) ...............................................................25,26

*United States v. Stevens,*
  559 U.S. 460 (2010) ..................................................................26

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ..................................................................34

*Wash. State Grange v. Wash. State Republican Party,*
  552 U.S. 442 (2008) ..............................................................24,25,26

*Wis. Realtors Ass'n v. Ponto,*
  233 F.Supp.2d 1078 (W.D. Wis. 2002) .................................................34

*Wis. Right to Life, Inc. v. Barland,*
  751 F.3d 804 (7th Cir. 2014) .....................................................12,13,14

## STATUTES

17 U.S.C. § 101 ..........................................................................13

Driver' Privacy Protection Act, 18 U.S.C. § 2721 et. seq. ...............................passim

18 U.S.C. § 2721(b) .................................................................passim

18 U.S.C. § 2722(a) ......................................................................12

18 U.S.C. § 2724(a) ......................................................................21

18 U.S.C. § 2724(b) ................................................................................. 22

18 U.S.C. § 2725(3) ........................................................................... 2,12,15

28 U.S.C. § 1292(b) ................................................................................ 1,9

5 ILCS 315/14(i) ...................................................................................... 16

725 ILCS 5/107A-5 .................................................................................. 23

Chicago Municipal Code § 2-152-050 ..................................................... 16

## UNITED STATES CONSTITUTION

United States Const. amend. I .......................................................... passim

United States Const. amend. IV ............................................................... 33

## OTHER AUTHORITIES

140 Cong Rec H 2518 H2526, 1994 WL 140035 (statement of Rep. Goss) ............................. 15

## JURISDICTIONAL STATEMENT

Defendant-Appellant's Jurisdictional Statement is complete and correct.

## COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Plaintiffs-Appellees, SCOTT DAHLSTROM, HUGH GALLAGLY, PETER KELLY, ROBERT SHEA, and EMMET WELCH ("the Officers") contend that the Defendant-Appellant, SUN-TIMES MEDIA LLC's (the "Sun-Times") Issues Presented for Review are in error. To begin with, the district court only certified two questions. It found that "the prior restraint issue does not meet the standard in § 1292(b)." R. Doc 4-3, pp. 100-102. While the Officers contend that this Court should therefore not review the prior restraint issue, the Officers indeed address the issue nonetheless in terms of the form of the question presented below and in their subsequent legal argument. Secondly, the Sun-Times' Issues Presented fail to accurately reflect the questions as the district court presented in its Certification Order. R. Doc. 4-3, pp. 94, 96. While the district court clearly stated what it determined the questions to be, the Officers contend that the district court erred when it left out "full names including middle initials and suffixes and month and year of birth" from the list personal information the Officers alleged the Sun-Times wrongfully published. The Officers Issues Presented for Review are as follows:

1. Whether the phrase "personal information" in the DPPA includes a person's full names including middle initials and suffixes, height, weight, hair color, eye color, and month and year of birth. R. Doc. 4-3, p. 94.

2. Whether the First Amendment permits an application of the DPPA that would prevent the news media from obtaining information from a person's motor vehicle record and publishing that information. R. Doc. 4-3, p. 96.

1

If this honorable Court finds it necessary to review the question of prior restraint, the Officers again refer to the district court formulation, which construed the relevant question as such:

   3.  Whether an order requiring a newspaper to cease publication of a news article – that is, remove the article from its website so that it can no longer be accessed – constitutes a prior restraint on speech.  R. Doc. 4-3, p 101.

## STATEMENT OF THE CASE

This case arises from the Sun-Times' failure to follow federal law in its pursuit to sell newspapers.  On some undisclosed date, the Sun-Times acquired the Officers' personal information from the Illinois Secretary of State's Department of Motor Vehicles ("DMV") records, and then published that information in an article entitled "*Daley Nephew Biggest On Scene, Not In Lineup,*" (the "Lineup Article") in its print and online editions on November 21, 2011.  R. Doc. 4-1, pp. 11-13.  In their One Count Complaint, the Officers alleged that this violated the Driver' Privacy Protection Act, 18 U.S.C. § 2721 et. seq.  ("DPPA") R. Doc. 4-1, pp. 4-10.  Contrary to the Sun-Times' opinion, the Officers possess a legitimate fear that the publication and ongoing public access to their personal information constitutes a threat to their personal safety.  Doc. 4-1, p. 9.

DPPA § 2725(3) establishes that personal information "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."  R. Doc. 4-1, p. 81.  The Officers concede that CPD turned over their "names" to the Sun-Times; however, the Officers' complaint alleges that the Sun-Times acquired, and subsequently published, their "full names" in conjunction with other DPPA

2

protected personal information from DMV records.  R. Doc. 4-1, p. 6.  The Sun-Times published

four of the Officers' first and last names, and middle initial.  R. Doc. 4-1, pp. 11-12.  The Sun-

Times also published one Officer's first and last name and suffix.  *Id*.  The acquisition and

publication of the Officers' DPPA protected personal information led to the Officers' Complaint.

R. Doc. 4-1, pp. 4-13.

### A.  The Parties

The Officers are Chicago police officers intimately aware of the fine line that exists

between being public officials and having private lives.  R. Doc. 4-1, p. 83.  The Officers take

fastidious care to protect their personal information from any additional public attention beyond

what they can already expect given the nature of their employment.  Id.  The Officers maintain

that any additional degree of access to their personal information increases the legitimacy of a

threat to them and their families.  Id.  The Officers volunteered to participate in the lineup that

the Sun-Times' made into a news story.  R. Doc. 4-1, p. 82.  The Officers had nothing to do with

the investigation of David Koschman's ("Koschman") death.  Id.  Out of necessity, the use of

officers in police lineups is a common and standard practice in police investigations.  R. Doc. 4-

1, pp. 5, 82.  The information the Sun-Times published matches the information on the Officers'

driver's licenses. R. Doc. 4-1, p. 8.  The Officers never consented to the Sun-Times' acquisition

or publication of their personal information.  R. Doc. 4-1. pp. 8-9.  Publication of their personal

information placed the Officers in grave concern for their own and their families' safety.  R.

Doc. 4-1, p. 6.

The Sun-Times considers the Line-up Article successful journalism.  R. Doc. 4-1, p. 29.

The Sun-Times published the lineup photographs to support its observation that the police

officers chosen to participate in the lineup were larger than Richard J. Vanecko ("Vanecko").  R.

Doc. 4-1, p. 19.  The Sun-Times believes the DPPA's statutory definition of "personal information" is consistent with its purpose in that it "lists only information that would 'identify' a driver."  R. Doc. 4-1, p. 22.  It likewise believes that the DPPA does not include the type of personal information it acquired and published because that information cannot be used to identify any particular individual.  Id.  The Sun-Times published the Officers' personal information to demonstrate that witnesses were unable to identify Vanecko because his likeness was too similar to the Officers.  R. Doc. 4-3, p. 90.

### B.  The Lineup Article

The Lineup Article suggested that the lineup was not legitimate.   R. Doc. 4-1, p. 11; R. Doc. 4-2, p. 136.  The Sun-Times stated that the "Lineup story reported possible malfeasance by public officials."  R. Doc. 4-2, p. 9.  The Officers and the Chicago Police Department ("CPD") were, however, in full conformance with Illinois law when they participated in the lineup.  R. Doc. 4-2, p. 130.[1]  The Sun-Times stated that it only published the Officers' photographs alongside their personal information because it wanted to show that officers picked for the lineup were even bigger than the 6'3" Vanecko.  R. Doc. 4-1, p. 19.  Several of the Officers are shorter than Vanecko. Doc. 4-1, pp. 11-13.  The Sun-Times published more than simply the Officers' heights and weights. Id.  The Sun-Times acquired the line-up photographs as well as the Officers' first and last names via a Freedom of Information Act ("FOIA") Request.  R. Doc 4-1,

---

[1] The Sun-Times wants to conflate its reasoning for publishing the lineup with the Special Prosecutor's reasoning for addressing it.  Despite the Sun-Times' subtle mischaracterization of the Special Prosecutor's Report (all individuals that testified in the Report stated that lineups are always necessary in homicide investigations), the Special Prosecutor stated that "all six of the participants in the [] lineup were white  males of similar, height, weight, and age."  *The Death of David Koschman, Report of the Special Prosecutor's Report* pp. 47-49 available at http://www.wlsam.com/upload/TheDeathofDavidKoschman-ReportoftheSpecialProsecutor.pdf (last accessed August 21, 2014).

p. 7.[2]  The photographs published by the Sun-Times were black and white photographs.  R. Doc.

4-1, pp. 11-13.  However, the Sun-Times' own citation indicated that it acquired the Officers'

additional personal information—their *full names including middle initials and suffixes*, hair

colors, eye colors, height, weights, and *month and year of birth*—from the Illinois Secretary of

State in contravention of the DPPA.[3]  R. Doc. 4-1, p. 11 (*emphasis added*).  Additionally, the

Lineup Article's print edition boasted that it had "More Online," including "13 unredacted police

reports" that the "Sun-Times removed personal data [from] including birthdates and addresses."

R. Doc. 4-1, p.1.

### C.  The Sun-Times' Motion to Dismiss

The Sun-Times' motion to dismiss pursuant to Fed R. Civ. Pro. 12(b)(6), stated that it

published the Officers' personal information to support its observation that their identifying

descriptions minimized Vanecko's size.  R. Doc. 4-1, p. 17.  It argued that it did not use any

"personal information" covered by the DPPA in the Lineup Article.  R. Doc. 4-1, p. 21.  The

Sun-Times further argued that even if it had used DPPA protected personal information in the

Lineup Article, its application would violate the First Amendment because it was a matter of

public concern given the fact that the lineup involved alleged governmental misconduct.  R. Doc.

4-1, pp. 25-30.  Finally, the Sun-Times argued that it would be an unconstitutional prior restraint

to remove the news from its websites and forbid further publication of the Officers' DPPA

protected information.  R. Doc. 4-1, pp. 30-31.  The Sun-Times' motion failed to address

publication of the Officers' full names.  *See generally* R. Doc. 4-1, pp. 17-31.  Likewise, as the

---

[2] *See* http://projects.suntimes.com/koschman/wp-content/uploads/2013/08/Koschman_Vanecko-lineup-report-Nov.-8-2004.pdf.  Clearly, the original case supplementary police report from the lineup only contained first and last names with no middle initials or suffixes.

[3] The Sun-Times' Statement of the Case neglects to mention that in addition to all other pertinent personal information, it also acquired and published Plaintiffs' full names including middle initials.

district court noted the Sun-Times never argued that its "conduct here falls within any of the 14 permissible uses listed in § 2721(b)." R. Doc. 4-2, p. 102.

The Officers responded that in the Sun-Times' rush to pass judgment on what it perceived as governmental misconduct, it committed its own investigative misconduct when it first obtained and then published the Officers' personal information. R. Doc. 4-1, p. 80. The Officers argued that the DPPA protects exactly the type of information the Sun-Times acquired and published. R. Doc. 4-1, pp. 80-87. As the district court noted in its first order, the Officers "contend that the totality of the published data identifies them within the meaning of the statute." R. Doc. 4-2, p. 22. They argued that the publication left them "gravely concerned for their safety" with "a heightened degree of emotional distress as their personal safety continues to be threatened." R. Doc. 4-1, pp. 6-7. They likewise argued that the DPPA did not violate the First Amendment. R. Doc. 4-1, pp. 87-93.

The Officers argued the DPPA does protect the type of information the Sun-Times published. R. Doc. 4-1, pp. 82-83. The Officers argued that the Sun-Times published information that subjected them to the dangers protected by the broader context and primary purpose of the DPPA. R. Doc. 4-1, p. 81. They argued that the DPPA protects individual's personal information acquired from the DMV, except for in certain clearly delineated circumstances, of which the Sun-Times' publication was not one. Id. The Officers contended that the Sun-Times' acquisition and publication of their full names, birth dates, heights, weights, and clarification of their hair and eye color in conjunction with the photographs, exposed the Officers and their families to a serious and immediate threat of grave physical harm. R. Doc. 4-1, pp. 9-10.

6

The Officers further argued that the DPPA does not violate the First Amendment. R. Doc. 4-1, pp. 87-92.  The Officers first argued that the First Amendment did not give the Sun-Times an unfettered right to access protected public records especially because the DPPA's restrictions would only have had a negligible or incidental impact on the Sun-Times' speech. R. Doc. 4-1, pp. 89-90.  They likewise argued that an injunction ordering the Sun-Times to remove the Officers' personal information from its website was not a prior restraint. R. Doc. 4-1, p. 92.  In their supplemental brief on the Constitutional Question, the Officers clarified their argument that DPPA is not invalid facially or as-applied under the First Amendment.  R. Doc. 4-2, pp. 125-135.

### D.  The District Court's Orders

While the Sun-Times makes much of the district court's initial remark that the Officers' position regarding the DPPA violation was an "awful stretch," (R. Doc.4-3, p. 56) once fully briefed, the district court denied the Sun-Times' motion to dismiss based upon the DPPA's merits and its constitutionality.  However, on April 24, 2014, the district court certified two questions stemming from its two orders denying the Sun-Times' motion to dismiss. R. 4-3, p. 102.

The district court's first order denied the Sun-Times' motion to dismiss based upon its interpretation of the DPPA's scope of protected personal information.  R. Doc. 4-2, pp. 98-104. The court concluded that the personal information the Sun-Times published "falls within the ambit of 'personal information' under the DPPA."  R. Doc. 4-2, p. 23.

In its certification order, the court clarified that it came to this conclusion "in part" because of *Senne v. Vill. Of Palatine*, Ill., 695 F.3d 597 (7th Cir. 2012).  R. Doc. 4-3, p. 95.  The court deemed it necessary to state that, in opposition to *Camara v. Metro-North R.R. Co.*, 596 F.Supp

2d 517, 523 7 n.9 (D.Conn. 2009), "use of the word 'including' usually makes a list illustrative rather than exhaustive[]" when referring to the DPPA's scope.  R. Doc. 4-2, p. 103.

The district court's next order denied the Sun-Times' motion to dismiss based upon its interpretation of the DPPA as applied to the First Amendment.  R. Doc. 4-3, pp. 3-10.  The court stated that it was "not persuaded that the DPPA, as applied in this case, limits speech."  R. Doc. 4-3, p. 7.  It went on to explain that the "First Amendment does not allow Defendant to access information from any source and use it however it pleases."  R. Doc. 4-3, p. 8.  In that same order, it also dismissed the Sun-Times' argument that an injunction would constitute an unconstitutional prior restraint on speech.  R. Doc. 4-3, pp. 8-9.  In its certification order, the court reiterated that it still thought "it is *probably a stretch* to say that motor vehicle records 'enable speech.'"  R. Doc. 4-3 p. 99 (emphasis added).

The district court's final order certified the Sun-Times' petition for interlocutory appeal regarding questions concerning the scope and constitutionality of the DPPA.  R. Doc. 4-3, p. 89.  The only time the court mentioned the risk to the Officers was when it stated that "it is not clear how revealing a person's height or hair color threatens that person's safety."  R. Doc. 4-3, p.96.[4]  The district court reiterated that it "held that the word 'including' in the statute meant that the items in the list were 'illustrative rather than exhaustive,' and that 'personal information' includes 'the information that Defendant published.'"  R. Doc. 4-3, p. 95.  The court, however, suggested that what the DPPA means by "identifies" would likely determine whether the Officers' information was protected or not. R. Doc. 4-3, p. 96.  The court went on to state that it was "possible" the Sun-Times' as-applied challenge to the DPPA constitutionality could survive on appeal.  R. Doc. 4-3, p. 97-98.  It explained that the Sun-Times had "at least a colorable

---

[4] Contrary to the Sun-Times' mistaken reading, the district court never "found in its Certification Order that the alleged disclosure poses no risk to officer safety."  See *Defendant's Appellate Brief at 12*.

argument that the DPPA restricts speech." R. Doc. 4-3, p. 98. However, it further clarified that "it is probably a stretch to say that motor vehicle records 'enable speech.'" R. Doc. 4-3, p. 99. Seemingly disregarding Illinois state law, the court then questioned whether the Officers should have been used in the lineup. Id. Finally, the court stated that "the prior restraint issue does not meet the standard in § 1292(b)." R. Doc. 4-3, p. 100.

## SUMMARY OF THE ARGUMENT

The Sun-Times would like this Court to disregard the DPPA's fundamental purpose as it applies to "[a]ny reporter." *Defendant-Appellant's Brief at 9* ("*Def'' s Br.'*"). While the Sun-Times fails to define just who qualifies as "any reporter" in today's environment of social media-driven amateur journalism; it does clarify that it believes any reporter should be able to harvest and disseminate any individual's personal information from state DMV records, provided the information is not specifically enumerated by the DPPA. While the Sun-Times contends the Lineup Article stems from an investigation of "potential police misconduct," an iota of preliminary research would have confirmed that the lineup was in fact completely in conformance with Illinois law. The Officers ask this Court to deny the Sun-Times' appeal and affirm the district court's orders denying the Sun-Times' motion to dismiss the Officers' complaint. The Officers' position is rather straightforward: The DPPA protects *any personal information contained within the DMV records* that a would-be stalker *could use to identify and locate an individual*. The Officers contend that the Sun-Times' acquisition and publication of the *totality of their personal information*—their full names including middle initials and suffix, hair and eye colors, heights and weights, and the months and years of birth—creates exactly the type of threat to their personal safety that the DPPA was intended to protect against.

Personal information under the DPPA includes a person's full names including middle initials and suffixes, height, weight, hair color, eye color, and month and year of birth.  The DPPA prohibits unconsented disclosure of an individual's personal information acquired from state motor vehicle records, except for in certain clearly specific circumstances, none of which apply to the Sun-Times' publication of the Officers information.   The DPPA's broader context and primary purpose clearly protect the totality of the type of information the Sun-Times published.   The DPPA prohibits acquisition and dissemination of personal information that make it more likely that a stalker could identify and locate an individual.  The Sun-Times violated the DPPA by carelessly disregarding the Officers' personal safety, treating them as nothing more than collateral damage in its efforts to sell newspapers.

Finding that the DPPA protects the type of personal information the Sun-Times published would not violate the First Amendment.  The DPPA neither violates the First Amendment facially or as applied.  It simply does not conflict with the Constitution.  Because the DPPA does not deny the Sun-Times access to information available to members of the general public, it does not abridge the First Amendment's protections.  The Sun-Times' repeated insistence that its publication of the Officers' personal information implicates some heightened public concern is a red herring.  The only public that it is of relevant concern here is the section of the population that might use this information to inflict retribution on these Officers and their families.  Additionally, because the harm caused by the Sun-Times has already occurred, ordering it to remove the information from its website would not constitute a prior restraint.

**ARGUMENT**

This honorable Court should deny the Sun-Times' appeal and affirm the district court's orders denying the Sun-Times' motion to dismiss the Officers' complaint.  The DPPA definition

of "personal information" includes the information about the Officers' that the Sun-Times acquired and published in its Lineup Article.  Additionally, the DPPA, facially or as applied, does not violate the First Amendment.  Finally, ordering the Sun-Times to remove the Officers' personal information from its website would not constitute a prior restraint under the First Amendment.

**I.      The DPPA's Definition of "Personal Information" Includes the Type of Information Acquired and Published by the Sun-Times in its Lineup Story**

The Sun-Times violated the DPPA on November 21, 2011, when it published personal information about the Officers that it obtained from the Illinois DMV records.  The Sun-Times mistakenly argues that none of the information it obtained and published is within the scope of the DPPA.  The district court disagreed with the Sun-Times and correctly denied their motion to dismiss the Officers' complaint.

The DPPA protects against acquisition and dissemination of personal information that make it more likely that a stalker could identify and locate an individual.  The DPPA's plain language suggests including an individual's full names, including middle initials and suffixes, height, weight, hair color, eye color, and month and year of birth under its umbrella of protected "personal information."  Likewise, the DPPA's broader context and primary purpose clearly protect the type of information the Sun-Times published.   Additionally, relevant case law supports the Officers' contention that the Sun-Times violated the DPPA when it acquired and published the Lineup Article.  Furthermore, the DPPA prohibits unconsented disclosure of an individual's personal information acquired from state motor vehicle records, except for in certain clearly specific circumstances, none of which apply to the Sun-Times' obtainment and publication of the Officers' information.   The Sun-Times violated the DPPA by carelessly

disregarded the Officers' personal safety, treating them as collateral damage in its efforts to sell newspapers.

**A. A Plain Language Reading of the DPPA Prohibits the Sun-Times' Acquisition and Publication of the Officers' "Personal Information"**

In general, the DPPA makes it unlawful for "any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use" not listed as a permissible use. 18 U.S.C. § 2722(a). As the Sun-Times notes, Congress enacted the DPPA as an anti-stalking law. *Def's Br. at 13.* The DPPA defines "personal information" as "information that identifies an individual, *including* an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, *but does not include* information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3)(*emphasis added*). Generally, in circumstances where a "statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters.,* 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917).

The Sun-Times wants the DPPA to *exclude* the type of personal information that it published. See generally *Def's Br.* at 12-16. It argues that "'personal information' should be confined to the categories of information that Congress expressly determined 'identifies an individual.'" *Id.* at 15. As support for their limited reading of the DPPA's plain language, they cite *Wis. Right to Life, Inc. v. Barland,* a case in which the Seventh Circuit "adopt[ed] a narrowing construction of a state statute . . . to comply with *Buckley's* express-advocacy

limitation . . ." 751 F.3d 804, 833-34 (7th Cir. 2014). However, because the DPPA is not a

campaign finance law, it need not comply with *Buckley*.[5]

The DPPA's plain language thus *includes* any personal information that a stalker might

use to access a would-be victim. As the district court noted, "the terms 'including' and 'such as'

in [a] preamble paragraph [] indicate the 'illustrative and not limitative' function . . ." *Campbell*

*v. Acuff-Rose Music*, 510 U.S. 569, 577 (1994) (citing 17 USC § 101); *See* R. Doc. 4-2, p. 22. A

different Seventh Circuit district court case determined that under the DPPA's plain language,

"an individual is entitled to state a claim based on the allegation that an employee of a state

department of motor vehicles knowingly disclosed to some third party his *name*, [and or] *date of*

*birth*, . . . obtained in connection with his motor vehicle records." *Smith v. Ill. Secy. of State*,

2003 U.S. Dist. LEXIS 6767, 3-4 (N.D. Ill. Apr. 21, 2003) (*emphasis added*). Furthermore, in

what appears to be its only opportunity, the Supreme Court applied the illustrative function of the

word "including" when noting that the "DPPA defines 'personal information' *as any information*

'that identifies an individual.'" *Reno v. Condon*, 528 U.S. 141, 144 (2000)(*emphasis added*). If

this Court applies the illustrative function to the word "including," the DPPA's plain language

would therefore prohibit the obtainment or disclosure of the type of personal information the

Sun-Times acquired and published.

---

[5] The Court notes that like in *Buckley v. Valeo*, 424 U.S. 1 (1976), the case involved "campaign-finance laws [which] operate in a core free-speech zone and directly target protected speech. In this context, we don't need to ask whether the challenged law reaches a substantial amount of protected speech; by definition, it does, because all political speech is protected. That's precisely why *Buckley* held that the "'government may regulate in th[is] area only with narrow specificity,'" 424 U.S. at 41 n.48 (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963), and drew the constitutional line at express election advocacy." *Wis. Right to Life, Inc*., 751 F.3d at 836. Here, DPPA personal information does not "operate in a core free-speech zone" and its regulatory function does not "directly target protected speech."

Contrary to the Sun-Times' assertion, the Officers' reading does not render the DPPA void for vagueness.  There is no ambiguity as to what information one may acquire and publish from DMV records: information that does not specifically identify an individual.  The DPPA allows obtainment and dissemination of "vehicular accidents, driving violations, and driver's status," in addition to zip codes.  § 2725(3).  No stalker could identify any of the Officers using simply this information.  However, one can clearly imagine a scenario where a stalker could use an Officer's full name in conjunction with a physical description of that Officer to identify and locate the Officer.[6]  R. Doc. 4-1, pp. 11-13.  The Officers' therefore advocate for a specific reading of the DPPA's plain language that prohibits obtainment and publication of any personal information used to identify an individual.  The Officers reading of the DPPA is "clear and precise enough to give a person of ordinary intelligence fair notice of what is required of him."  *Wis. Right to Life, Inc.*, 751 F.3d at 835.  The Sun-Times simply overlooked or ignored that notice.

**B. The DPPA's Primary Purpose and Broader Context Prohibit the Sun-Times' Acquisition and Publication of the Officers' "Personal Information"**

The DPPA's primary purpose and broader context advocate protecting the totality of the Officers' personal information.  The DPPA's primary purpose is to protect the privacy of personal information; it was born as a legislative means to help prevent stalkers from acquiring personal information about the individuals they were stalking.  Likewise, the DPPA's broader context necessarily protects any information that would allow a stalker to better identify and potentially harm a would-be victim.

---

[6] It should be noted that the photographs that the Sun-Times published were black and white photographs.  Without the added personal information acquired from the DMV, no would-be stalker would ever have known these Officers' eye and hair colors, not to mention all their other physical descriptions.

The publication of the information the Sun-Times acquired from the DMV violates the DPPA's primary purpose. The Sun-Times misconstrues the very issue that gave rise to the enactment of DPPA protection. *See* 140 Cong Rec H 2518 H2526, 1994 WL 140035(statement of Rep. Goss)("[I]n 34 States, [], anyone can walk into the DMV office with a license plate number, pay $5 to $10, and get the car owner's name, address, phone number, height, weight, date of birth, and other very personal information-no questions asked. As it stands in those States, a total stranger-potentially a stalker-can easily obtain personal information without knowing anything more than a license plate number."). The Officers' complaint alleged that publication of their personal details constitutes the exact type of threat the drafters of the DPPA intended to help curtail. The Sun-Times wrongly contends that the Officers "would read the qualifying text, 'information that identifies an individual' out of section 2725(3)." *Def's Br. at 12*. This is anything but accurate; in fact, the Officers advocate for a reading of the DPPA that encompasses exactly that. While the Sun-Times may be better equipped to identify someone using "telephone numbers, or medical and disability information," would-be stalkers logically would be able to better utilize information like "hair color or weight" to identify potential victims. *Id.* Just because the Sun-Times refuses to recognize this, does not mean this Court should.

Determining that the DPPA protects the type of personal information acquired and published by the Sun-Times would materially advance the statute's primary purpose. The Sun-Times is essentially claiming that a stalker that intends to physically harm someone would be more successful with that person's driver's license number than with a physical description of that person. This makes no sense. The DPPA's intention is to protect against disclosure of any personal information that would make it easier for a would-be stalker to find his or her prey. As

the DPPA protects against dissemination of personal information that make it more likely that a stalker could *locate* an individual, like home addresses or driver's license numbers, it also protects against dissemination of personal information that make it more likely that a stalker could *identify* an individual, like hair and eye color.

This Court should consider the DPPA's broader context; doing so further reiterates that publication of the information the Sun-Times acquired from the DMV violates the DPPA's primary purpose.  The Supreme Court has noted in reference to the DPPA that "[i]t is necessary and required that an interpretation of a statutory phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning." *Maracich v. Spears*, 133 S. Ct. 2191, 2192 (2013).   In the instant case, the DPPA's entire text communicates a clear purpose: to protect individual personal information willingly submitted to the DMV from falling into the hands of would-be stalkers.  While the Sun-Times continues to claim that the Officers have no legitimate reason to fear that the information in the Lineup Article could be used to harm them or their families, the Sun-Times is dead wrong.[7]

In the instant case, all the Officers live in Chicago as required by statute.  5 ILCS 315/14(i); Chicago Municipal Code § 2-152-050.  All the Officers interact with criminals on a regular basis as part of their employment.  All the Officers are aware that a wide-scale societal bias exists against the Chicago Police.  Police officers are historically secretive about their personal information for exactly these reasons.  They are all too familiar with the impact crime has on victims and their families.  Here, the Sun-Times carelessly disregarded the Officers' personal safety as nothing more than mere collateral damage in its efforts to sell newspapers.  While the CPD only supplied the Sun-Times with the black and white lineup photographs and

---

[7] The Sun-Times is similarly wrong when it suggest, throughout its brief, that the district court agrees with it that the Officers' have no legitimate fear.  See *Def's Br. at 25* ("Yet the district court acknowledged that censoring the sun-Times would not protect police officers from stalkers").

the first and last names of the Officers, it decided to publish almost every detail, including

middle initials, it garnered from the DMV.  Furthermore, the print edition instructed readers to

check out "More Online," including "13 unredacted police reports" that the "Sun-Times removed

personal data [from] including birthdates and addresses."  R. Doc. 4-2, p. 1.  Why the Sun-Times

published the birth dates of the Officers but felt that publishing others' birth dates would be

improper remains to be seen.

Regardless of the Sun-Times' short-sighted surmise that the Officers' fears about their

safety are "baseless concerns about their privacy and security," the threat posed by public access

to their information is very much real.  *Def's Br. at 27*.  Because of the totality of information

published by the Sun-Times, would-be stalkers can now find these Officers' home addresses.

For example, although the Sun-Times did not publish any Officers' home addresses, anyone can

instantly access the Officers' addresses using the personal information the Sun-Times obtained

from the DMV and published.  All Chicago Police Officers live within the city limits of Chicago.

Any would-be stalker can simply type any individual "Officer's published full name, including

middle initials and suffix," and their city of residence, "Chicago," into the *www.whitepages.com/*

internet site to find that Officer's home address.  To confirm the home address, one can then use

the individual Officer's month and year of birth published by the Sun-Times and validate that his

age falls within the five-year age range provided by the website's match.  Conversely, a search

with just "Chicago" and any individual "Officer's first and last name," provides a multitude of

matches for each Officer.  Without the published month and year, a would-be stalker cannot

confirm which match is the Officer, and therefore, cannot confirm his home address.

The Sun-Times discounts the notion that the Officers' information it published is

"personal."  While it lampoons the Officers' fear of possible retribution engendered by the public

access to their personal information, the Sun-Times cannot dismiss the fact that the Officers'

Complaint properly alleged that the Sun-Times violated exactly what the DPPA intended to

protect against: publication of personal information that leaves one "gravely concerned for their

safety" with "a heightened degree of emotional distress as their personal safety continues to be

threatened." R. Doc. 41-, pp. 6-7. By publishing the lineup photographs and their full names,

including middle initials and suffix, in conjunction with the Officers' birth dates, heights, and

weights, and clarifying what hair and eye color the Officers possessed, the Sun-Times exposed

these Officers and their families to a serious and immediate threat of grave physical harm. The

DPPA's primary purpose is to eliminate this very threat.

### C. Case Law Supports the Officers' Interpretation of DPPA Protected "Personal Information"

Relevant case law supports protection of the Officers' totality of personal information

published by the Sun-Times' Lineup Article. To begin with, contrary to the Sun-Times'

insistence, *Senne* is instructive in terms of understanding what personal information the DPPA

was intended to protect. 695 F.3d 597. Furthermore, existing case law clearly demonstrates a

distinct tendency to consider the DPPA's primary purpose and broader context when interpreting

the statute's scope of protections.

The Sun-Times would like to discredit the district court's reliance on *Senne* because

according to the Sun-Times, the district court's order turned solely on *dicta* entered after briefing

on the Sun-Times' Motion closed. *Def's Br. at 3*. While the *Senne* defendant ultimately

prevailed on summary judgment, it did so under one of the DPPA permissible uses pursuant to

Section 2721(b)(1) and *not* because of any change in the court's opinion regarding what type of

personal information is protected. *Senne v. Palatine*, 2013 U.S. Dist. LEXIS 168677 (N.D. Ill.

Nov. 27, 2013). Additionally, the earlier *Senne* case lists the policy reasons that Congress

enacted the DPPA, including "the impact of the availability of DMV records on the safety of [. . .] law enforcement officers and their families." 695 F.3d at 607. This concern, of course, is the central motivation for the Officers' Complaint and remains a very real concern no matter how much the Sun-Times downplays or delays it.

Furthermore, case law clearly supports consideration of the DPPA's primary purpose and broader context when determining whether or not the Sun-Times' publication of the Officers' personal information violated the DPPA. The Sun-Times relies on a preemption clause in the Petroleum Marketing Practices Act [8] and a footnote from a Second Circuit, District Court of Connecticut case, *Camara v. Metro North R. Co.* 596 F.Supp.2d 517 (2009), to support its limited opinion that the DPPA excludes protection of birth dates and unexpressed categories of information that do not identify an individual. *Def's Br. at 15.* However, the Seventh Circuit already stated that "[w]hat is apparent from considering the DPPA as a whole is that it is concerned with the ultimate use or uses to which personal information contained in motor vehicle records is put." *Graczyk v. West Publ'g Co.*, 660 F.3d 275, 279 (7th Cir. 2011).

While the *Camara* footnote does exclude birthdates, the court did so because birth dates were lumped in with other information found in the plaintiffs' driving history records. *Camara,* 596 F.Supp.2d 517 (2009). *Camara* obviously did not trigger any of the concerns that the DPPA intended to address. The court said so itself when it stated that "the record is clear that, in passing the DPPA, Congress intended to protect the physical safety of an individual who entrusts her personal information to a state DMV, not a list of her traffic violations." *Camara*, 596 F.Supp.2d at 524. If anything, *Camara* stands for the proposition that when determining whether

---

[8] Which like the DPPA "specif[ies] with such precision when the States must stand aside in favor of federal regulation . . ." This case is inapplicable because the "express list" is finite and does not contain the illustrative word "including." *Dersch Energies v. Shell Oil Co.*, 314 F.3d 846, 861 (7th Cir. 2002).

the DPPA applies, a court should consider the Act's "broader context and primary purpose."[9] *Id.* at 523-24.

    *Camara* is not analogous to the instant case in that *Camara*'s defendant's "acquisition and use of its employees' driving histories" failed to "implicate the protections of the DPPA." *Id.* at 525.  In this case, the Officers have alleged that the Sun-Times' acquisition and publication of their personal information, including their names and birth dates, jeopardizes their personal safety.

    Furthermore, other courts have found the totality of DPPA information does include dates of birth or physical characteristics.  For instance, in *Johnson v. West Publ. Corp.*, the court found that the DPPA "is not a model of statutory drafting, but if it means anything at all it is this: A potential stalker cannot walk into a Missouri DMV to obtain every Missouri driver's name, address, *height*, *weight*, *eye color*, driver's license number, and social security number without a specific permissible use under the DPPA."  801 F. Supp. 2d 862, 877 (W.D. Mo. 2011) (*emphasis added*).  Likewise, in *Gordon v. Softech Int'l Inc.*, the court found that personal information from the New York DMV includes a "full name, *date of birth* and home address." 2011 U.S. Dist. LEXIS 46992 (S.D.N.Y. Apr. 28, 2011) (*emphasis added*).  Furthermore, *Manso v. Santamarina & Assocs.*, found that a plaintiff's "name, address, *date of birth*, *height*, gender, *eye color*, New York State Motor Vehicle Identification Number, restrictive lens status, license class, license status and license expiration date," are all considered personal information under the DPPA.  2005 U.S. Dist. LEXIS 7316 (S.D.N.Y. Apr. 26, 2005) (*emphasis added*).  In *Best v.*

_____

[9] *Camara* is clear on this, it states that "As the Second Circuit has noted, '[w]hen determining which reasonable meaning [of a statute] should prevail, the text should be placed in the context of the entire statutory structure.' *Nat'l. Res. Def. Council v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001). Ultimately, 'courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as  to carry out in particular cases the generally expressed legislative policy.' *SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 350-351(1943)."

*Berard*, like *Camara*, the court determined that "a reasonable jury could find that the *totality of the information displayed* was information that identified Best and as such, a reasonable jury could find that it was '*information that identifies an individual*' and thus 'personal information' under the DPPA." 2011 U.S. Dist. LEXIS 131572 at 19 (N.D. Ill. Nov. 15, 2011) (*emphasis added*). This list is by no means exhaustive. While the Sun-Times suggest that canons of statutory interpretation "cut against" the Officers' interpretation, case law largely interprets that the DPPA's primary purpose and broader context protect personal information like *dates of birth* or *physical characteristics*.

**D. The Sun-Times' Unconsented Disclosure of the Officers' Personal Information is not a Permissible Use Exception under the DPPA**

The DPPA prohibits unconsented disclosure of an individual's personal information gleaned from state motor vehicle records, except for in certain clearly delineated circumstances. The DPPA imposes liability on any "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter." 18 U.S.C. § 2724(a). The DPPA contains fourteen (14) permissible uses exempted under 18 U.S.C. § 2721(b). The permissible uses range from use by "any government agency, including any court or law enforcement agency" to any other use "under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." *Id*. However, publication of an individual's personal information in a newspaper or other media publication is not one of those exempt circumstances.

The Supreme Court has narrowed the scope of the DPPA permissible uses. The Court recently found that while "[u]nless commanded by the text, [], these exceptions ought not operate to the farthest reach of their linguistic possibilities if that result would contravene the statutory design." *Maracich*, 133 S. Ct. at 2200. For instance, it found that if § 2721(b)(4) "were read to

permit disclosure of personal information whenever any connection between the protected information and a potential legal dispute could be shown, it would undermine in a substantial way the DPPA's purpose of protecting an individual's right to privacy in his or her motor vehicle records." *Id*. The court reasoned that the "'in connection with' language in (b)(4) must have a limit.'" *Id*.

While it never before argued that its obtainment and disclosure qualified for a permissible use exception, the Sun-Times now wants to expand the scope of the DPPA's permissible use by fitting its obtainment and disclosure under § 2721(b)(14).[10] It argues that the Officers "cannot dispute" that the DMV "released the information in response to legitimate newsgathering concerning matters of law enforcement and public safety."[11] *Def's Br. at 20*. However, because no discovery has been done thus far in this case, the Officers have no reasonable basis to formulate an opinion as to why the DMV released their personal information. More importantly and much to the contrary, the Officers have consistently disputed that their personal information was either a matter of "law enforcement" or "public safety." Contrary to the Sun-Times' sensationalistic news reporting, the fact that these Officers looked similar to Vanecko created no legitimate law enforcement or public safety concern whatsoever.

---

[10] The Sun-Times, in its Footnote No. 8, also curiously fails to fully quote another incorrectly cited permissible use exception. It cites §2724(b)(3) instead of what the Officers believe it meant to cite: §2721(b)(3). Regardless, the full citation is far more restrictive than the Sun-Times would like this Court to believe. The full text is "For use in the normal course of business by a legitimate business or its agents, employees, or contractors, *but only* --(A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual." §2721(b)(3) (*emphasis added*).

[11] Contrary to the Sun-Times Footnote No. 7, the Officers' real argument was that regardless of why the Sun-Times published the Lineup story, it clearly did not know the Illinois law and CPD General Orders on lineups. Furthermore, the Sun-Times' story does not question "the reason for the lineup," it questioned the Officers in the lineup and CPD use of the Officers. It does not matter if the Special Prosecutor questioned the reason for the lineup because the Special Prosecutor did not obtain and publish the Officers' personal information like the Sun-Times did.

While, the Sun-Times relies on Illinois law to support its claims that it was conducting "newsgathering . . . [that] relates to the operation of a motor vehicle or public safety," it fails again to address the relevant Illinois law regarding lineup fillers. *Def's Br. at 21*. Illinois law required that the fillers in the lineup look similar to Vanecko. Illinois requires that "Suspects in a lineup or photo spread *should not appear to be substantially different* from 'fillers' or 'distracters' in the lineup or photo spread, based on the eyewitness' previous description of the perpetrator, or based on other factors that would draw attention to the suspect." 725 ILCS 5/107A-5 (*emphasis added*). Accordingly, the Officers' physical resemblance is not part of any CPD cover-up as insinuated by the Sun-Times; instead, it is evidence of the Officers following the letter of the law. As such, acquisition of their personal information cannot be considered legitimate newsgathering.

The use of personal information acquired from state motor vehicle records is intimately bound up with the DPPA's protective function. As mentioned above, the Seventh Circuit believes that it is clear that the DPPA "is concerned with the ultimate use or uses to which personal information contained in motor vehicle records is put." *Graczyk,* 660 F.3d at 279. Here, the Sun-Times obtained, disclosed, and used the Officers' personal information to sensationalize a non-story and sell newspapers. As such, the Sun-Times obtainment and disclosure cannot qualify for the DPPA's permissible use exception.

## II. The DPPA Does Not Violate The First Amendment

The DPPA is a constitutionally valid federal statute that protects personal information from falling into the wrong hands. Contrary to the Sun-Times' hand wringing, it does not conflict with the Constitution. The DPPA's primary goal is to protect the privacy of personal information. It is a legislative protection designed to help prevent stalkers from acquiring

personal information about the individuals they are stalking.  The DPPA prohibits unconsented

obtainment and disclosure of any individual's personal information culled from state DMV

records, except for in certain clearly delineated exceptions.  Newspaper publication of any

individual's personal information is not covered by any of the exceptions.  The Sun-Times would

like this Court to find that DPPA violates the First Amendment because it believes that the right

to free speech protects any and all of its newspaper reporting practices.  Finding that the DPPA

violates the First Amendment would circumvent the DPPA's intended protections and set a

standard that could jeopardize countless individuals moving forward.

When previously addressing whether the First Amendment makes the DPPA

unconstitutional, the Seventh Circuit found that position "untenable."  *Travis v. Reno*, 163 F.3d

1000, 1007 (7th Cir. 1998).  The Court explained that "[p]eering into public records is not part of

the 'freedom of speech' that the first amendment protects."  *Id.*  The Court went on to state that

"There is no constitutional right to have access to particular government information, or to

require openness from the bureaucracy." 163 F.3d at 1007 (quoting *Houchins v. KQED, Inc.*, 438

U.S. 1, 14 (1978) (plurality opinion)).

The DPPA does not violate the First Amendment facially or as applied.  The DPPA is

facially valid under the First Amendment because the Act passes the intermediate scrutiny test in

that it is not too expansive or sweeping and it has a specific link between its restrictions and the

injuries it seeks to remedy.   Furthermore, the DPPA is not invalid as applied under the First

Amendment because no public concern trumps the Sun-Times' violation of the DPPA.

### A.  The DPPA is Facially Valid

The DPPA is facially valid.  While facial challenges are generally disfavored, if the Court

analyzes the facial validity, it should employ the intermediate scrutiny analysis because the

DPPA is a content neutral restriction. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). Even if the DPPA "has an incidental effect on some speakers or messages but not others, the regulation is content neutral if it can be justified without reference to the content of the expression." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 294 (2000). Contrary to the Sun-Times' opinion, the DPPA can be justified without reference to the content of the expression—it is not that the type of personal information the DPPA protects *per se* could never be expressed. Instead the DPPA prohibits acquisition of personal information specifically from the DMV, except for specific reasons. The DPPA was enacted to keep personal information from potential stalkers, not because the government disagreed with the message the personal information conveyed. Accordingly, the DPPA is a content-neutral regulation.

The DPPA's regulations should therefore be held constitutional if they "further[] an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994) (citing *United States v. O'Brien*, 391 U.S. 367, 376-377 (1968)). If the DPPA's purpose is unrelated to the suppression of expression, then it need only satisfy the less stringent standard of analysis. *City of Erie,* 529 U.S. at 289. The DPPA clearly furthers an important governmental interest in protecting people's personal information. That protection is wholly unrelated to the suppression of free expression. The DPPA is not too expansive or sweeping and a specific link exists between its restrictions and the injuries it seeks to remedy. The DPPA thus passes the intermediate scrutiny test.

The DPPA is also not facially invalid because it is neither unconstitutional in every one of its applications nor is it too overly broad in its scope. In order for a statute to be facially

invalid it "typically requires that 'no set of circumstances exists under which the [law] would be valid.'" *Bell v. Keating*, 697 F.3d 445, 452-453 (7th Cir. 2012) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). This essentially requires that Sun-Times show that the DPPA is unconstitutional in all of its applications. *Salerno*, 481 U.S. 739, 745. Because of this high standard, courts addressing a facial challenge need necessarily exercise judicial restraint. Doing so "frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy." *United States v. Raines*, 362 U.S. 17, 22 (1960). Furthermore, in order for the DPPA to be found facially invalid because it is overly broad, this Court must determine that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460 (2010) (citing *Washington State Grange*, 552 U.S. at 449.

The Sun-Times cannot demonstrate that the DPPA is facially invalid. To begin with, the DPPA is not unconstitutional in all of its applications. The DPPA's regulatory restrictions are in the proportion to the Act's interests. Its limits on obtaining and publishing certain personal information achieve the government's goal of protecting individuals and preventing stalking. Clearly, given the Seventh Circuit's decision in *Travis v. Reno*, the DPPA is not unconstitutional in all of its applications. 163 F.3d 1000. Furthermore, the DPPA is not overly broad in that it contains a series of exceptions and there is no other alternative or way it could be less restrictive to preserve its goal.

The DPPA is thus limited in its scope to personal identifying characteristics. DPPA Section 2721(b) provides for fourteen (14) instances where use or disclosure of personal information obtained from the DMV is permissible. The DPPA is thus limited in its scope to

26

certain instances of use or disclosure.  Unfortunately, for the Sun-Times, publication of individual's personal information in its newspaper is not one of those permissible use exceptions.

The Sun-Times violated a constitutionally sound federal statute lawfully created by Congress.  The First Amendment does not provide an absolute right to allow the media and press to do whatever they desire. This Court should uphold the DPPA because "[l]iberty of speech, and of the press, is also not an absolute right, and the State may punish its abuse.  *Near v. Minn.*, 283 U.S. 697, 708 (1931).  Because the DPPA is constitutionally valid on its face, the Sun-Times' attempts to hide behind the First Amendment privilege should be rejected.

### B.  The DPPA is Valid as Applied

The DPPA is valid as applied in the instant case.  Any burden that the DPPA places on freedom of speech is incidental at best.  Historically, the First Amendment "does not guarantee the press a constitutional right of special access to information not available to the public generally."[12]  *Pell v. Procunier*, 417 U.S. 817, 833-834 (1974).  In fact, "[d]espite the fact that news gathering may be hampered, the press is regularly excluded" from a variety of contexts.  *Id*. The protections intended by the DPPA are greater than any nominal effect on the Sun-Times' ability to tell its story.  The Sun-Times would like to hide behind the First Amendment protections afforded to speech that is of "the utmost public concern."  *Def's Br. at 23*.  However, as applied here, publication of the Officers' statutorily protected personal information is not of relevant public concern.  Likewise, the Sun-Times' editorial discretionary concerns do not make the DPPA invalid as applied.  The Sun-Times' misused its editorial discretion to sensationalize and criticize actions regarding the lineup.  Using the Officers in the lineup because they shared

---

[12] Explaining that news reporters have no constitutional right to access beyond that afforded the general public to many areas including: grand jury proceedings, personal conferences, meetings of other official bodies gathering in executive session, meetings of private organizations, to prisons or their inmates, and the scenes of crime or disaster where the general public is excluded.

similar personal characteristics with Vanecko was not part of some police cover-up; instead, it

was in adherence with Illinois law and CPD General Orders governing line-ups.  Given the

totality of the circumstances, the Sun-Times' publication of DPPA protected personal

information certainly is not "speech that matters."  *Gertz v. Robert Welch*, 418 U.S. 323, 341

(1974).

No issue of public concern in this case makes the DPPA invalid as applied.  The Officers'

personal information that the Sun-Times obtained from the DMV and published in its print and

online editions is of no relevance to the public concern.  Generally, First Amendment protected

speech "involves a matter of public concern when it involves an issue of social, political, or other

interest to a community."  *Snyder v. Phelps*, 580 F.3d 206, 219-220 (4th Cir. 2009).  Any analysis

of "the content, form, and context of such speech, as revealed by the whole record," clearly

establishes the DPPA information was incidental at best to the Sun-Times' Lineup Article.  *Id.* at

220.  The Officers in the photo lineups have no tangential relationship to the Article.  They did

not do anything wrong.  They did not investigate the crime that gave rise to the Sun-Times'

Article.  They simply stood in as fillers for a police lineup.  In fact, many times, fillers in photo

lineups are not police officers at all, but civilians or detained arrestees in unrelated cases.

However, because these Officers made themselves available for the lineup, the Sun-Times

wrongfully made, and continues to make, their protected personal information available to the

general public.

Contrary to the Sun-Times' sensationalistic news reporting, the fact that these Officers

looked similar to Vanecko is of no relevant public concern whatsoever.  As explained, the

Officers were asked to stand in the line-up because of their similarity to Vanecko based upon

requirements found in Illinois law and CPD General Orders.  The Officers' physical resemblance

28

was not part of any police cover-up as insinuated by the Sun-Times; instead, it is evidence of CPD following the letter of the law. "Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues," but instead "belong to that category of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Gertz,* 418 U.S. at 340 (citing *New York Times Co. v. Sullivan*, 376 U.S., 254, 270 (1964) and *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). The Sun-Times' publication of the Officers' personal information fits squarely into that category: any benefit gleamed from obtainment and use of their personal information is clearly outweighed by the societal value of the DPPA's intended protections. Not only did the Sun-Times disregard the law by publishing the Officers' personal information, it continues to disregard the law by claiming that the similarity between the Officers and Vanecko is of any public concern.

Even if this Court disregards Illinois law and CPD General Orders, there still is no relevant public concern. Pursuant to a FOIA request, the CPD supplied the Sun-Times with the lineup photographs and the first and last names of the Officers. The Sun-Times decided to publish every detail, including middle initials, and months and dates of birth, which it garnered from the DMV about the Officers. The resemblance between the Officers and the Vanecko is blatantly obvious to anyone who simply looks at the photograph—the personal information the Sun-Times obtained from the DMV and published does nothing to heighten the public's appreciation of that fact. Publishing the personal information, including the middle initials and suffix, and months and years of birth, simply sensationalizes the story to sell more newspapers. The Officers' personal information is of no public concern.

Furthermore, no right of editorial discretion in this case makes the DPPA invalid as applied. Gathering and publishing the Officers' personal information serves no public interest. The public can visually see the Officers in the line-up photo to make the Sun-Times' point. The Sun-Times believes the DPPA casts a shadow upon the First Amendment's light of editorial discretion; but it does not such thing. The First Amendment may afford the Sun-Times "absolute authority to shape [its] content," and as such, protect "the exercise of editorial control and judgment." *Ampersand Publ, LLC v. NLRB*, 702 F.3d 51, 56 (D.C. Cir. 2012). Furthermore, that "exercise of editorial control and judgment" may involve "limitations on the size and content of the paper, and treatment of public issues and public officials -- whether fair or unfair." *Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 258 (1974). However, the Officers' DPPA protected personal information is neither a public issue nor are the Officers' public officials in the legal sense.

As stated at length above, the Officers' protected personal information is simply not a matter of public concern. The CPD line-up was not an attempt to fool any lineup witness; it was simply a procedural step in accordance with Illinois law. Any conceivable relevance wringed out of the DPPA protected Officer's personal information is overwhelmingly superseded by the DPPA's societal value. Furthermore, the designation of "public figure" is generally limited to "two alternative bases." *Gertz*, 418 U.S. at 351 (1974). Either an individual "achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts," or "an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id*. Regardless, "[i]n either case such persons assume special prominence in the resolution of public questions." *Id*. Here, the Officers are certainly not famous or notorious public figures. More importantly, they did not

inject themselves into a public controversy.  These officers simply submitted to a photographic lineup on a specific day in accordance with Illinois law and their own employment regulations. In no way did they voluntarily make available their personal information that Defendant wrongfully obtained and published.  Any ruling that establishes that they did will have a chilling effect on police lineups—no officers who know their personal information will be made public will ever take part in a lineup ever again.

The First Amendment does not invalidate the DPPA as applied here.  The First Amendment should embody "an overarching commitment to protect speech from government regulation through close judicial scrutiny, thereby enforcing the Constitution's constraints, but without imposing judicial formulas so rigid that they become a straitjacket that disables government from responding to serious problems." *Denver Area Educ. Telcoms. Consortium v. FCC,* 518 U.S. 727, 741 (1996).  Courts have "consistently held that government may directly regulate speech to address extraordinary problems, where its regulations are appropriately tailored to resolve those problems without imposing an unnecessarily great restriction on speech."  *Id*.  The DPPA protects individual personal information from falling into the hands of stalkers.  The Sun-Times' Article would have had exactly the same impact if it had simply ran the lineup photographs and stated the obvious—that all the men *looked* similar, instead of publishing all the specific information it obtained from the Officers' DMV records.  Defendants' "successful journalism" would not have been impeded by the DPPA's intended protections.  R. Doc. 4-1, p. 29.  Had the Sun-Times conformed to the DPPA's restrictions, the impact would have done nothing to alter or inhibit their ability to completely report its story.  Instead, it published personal information that it wrongfully obtained and it now seeks to wrongfully rely on the First Amendment.

31

Additionally, the Sun-Times attempts to use the case of *Ampersand Publ, LLC v. NLRB*, 702 F.3d 51 (D.C. Cir. 2012), as proof that federal statutes will be held unconstitutional as applied if it inhibits a newspaper's editorial processes. *Def's Br. at 26, 28.* In *Ampersand,* the D.C. Court of Appeals held that Ampersand Publishing was not in violation of the National Labor Relations Act when it imposed its own editorial policies, and managerial decisions based off those policies, to the detriment of the Publisher's employees. *Ampersand Publ., LLC,* 702 F.3d at 59. The court found that the Publisher's editorial discretion was an inherent managerial right, and did "not constitute a 'term or condition' of employment" in which employees have a legitimate interest in accordance with Section 7 of the NLRA. *Id.* at 57. The court stated that employee efforts to affect the managerial policies are beyond the scope of Section 7. *Id.*

However, the court in *Ampersand* never ruled that the Section 7 of the NLRA was unconstitutional as it applied to the Publisher's control of the content of its newspaper. Instead, it ruled that NLRA does *not apply on its merits* because the Publisher's editorial discretion in its newspaper is not a protected employee activity under Section 7. 702 F.3d at 57-59 (*emphasis added*). As such, *Ampersand* is distinguishable and thus inapplicable to the instant case because the court's ruling was based upon the merits, and not the constitutionality, of Section 7 of the NLRA in its relation to the newspaper's editorial processes.

*Am. Civil Liberties Union of Illinois v. Alvarez ("ACLU")*, is also not analogous to the instant case. 679 F.3d 583, 601 (7th Cir. 2012). *ACLU* does not eliminate the distinction between access and publication. *ACLU* does not disrupt the legal foundation on which the district court found the DPPA constitutional. *ACLU* establishes that a "generally applicable law [like the DPPA] will not violate the First Amendment simply because its application has an incidental effect on speech or the press," like it has in the instant case. 679 F.3d at 601. *ACLU,*

found unconstitutional a statute that restricted a medium of expression *commonly used* for the preservation and communication of information and ideas. *ACLU*, 679 F.3d at 595. It furthermore found that the governmental interest in protecting conversational privacy was not implicated when people audio record police officers performing police duties in public while engaging in public communications witnesses can hear. See generally *ACLU*, 679 F.3d at 605.

*ACLU* is dissimilar to the instant case because harvesting information from DMV records is clearly not a commonly used medium of expression. The general public also cannot access and acquire personal information of other individuals from the DMV. Individuals that avail themselves of the bureaucratic trappings of the DMV do so with a Fourth Amendment protected reasonable expectation of privacy. The First Amendment protection in *ACLU* derives from a different set of circumstances. The *ACLU* court plainly articulates such when it says that, "[s]imply put, these [Fourth Amendment] privacy interests are not at issue here. The ACLU wants to openly audio record police officers performing their duties in public places and speaking at a volume audible to bystanders." *Id*. While the Sun-Times would like to make this strained analogy, public bystanders cannot simply peer into individual personal DMV records as the Sun-Times has done. Furthermore, Plaintiffs were not performing any police duties in submitting their personal information to the DMV. They did not engage in any public act as part of their employment nor did they engage in public communications that witnesses could have overheard in submitting their information to the DMV. *ACLU* is distinguishable and thus not applicable to the instant case.

### III.    Ordering The Sun-Times To Remove The Officers' Information From Its Website Does Not Constitute A Prior Restraint

Any injunction ordering the Sun-Times to remove the Officers' personal information from their website would not constitute a First Amendment prior restraint. The DPPA protects

against exactly the type of very real safety and security concerns at stake in this case.  The Sun-Times violated the DPPA by obtaining, and on November 21, 2011, publishing the Officers' protected personal information.  Every single day since publication, the Officers' have had to live with the fact that their personal information has been publicly available to any would-be stalker that so chooses to access it.  As explained above, it would only take a few minutes of internet research using the information the Sun-Times harvested from the DMV to locate any one of the Officers' home addresses.  The Sun-Times claim today, that the Officers do not have a "plausible injury," is as short-sighted as its obtainment and publication of their information was back in 2011.  *Def's Br. at 32.*

A "prior restraint' is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (*emphasis in the original*).  In order to determine if "a particular regulation is a prior restraint, the 'relevant question is whether the challenged regulation authorizes suppression of speech in advance of its expression.'" *Wis. Realtors Ass'n v. Ponto*, 233 F.Supp.2d 1078, 1090 (W.D. Wis. 2002) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 795 n.5, (1989).  As such, "prior restraints are those regulations that give 'public officials the power to deny use of a forum in advance of actual expression.'"  *Id*.  Additionally, this Court noted recently that "prior restraint analysis is appropriately reserved for regulations that raise the prospect of traditional content-based censorship, where government officials 'prevent the dissemination of ideas or opinions thought dangerous or offensive,' rather than for content-neutral [regulations] that carry with them the potential to limit free expression." *Wis. Realtors Ass'n*, 233 F. Supp. 2d at 1091 (2002) (quoting *Blue Canary Corp. v. City of Milwaukee*, 251 F.3d 1121, 1123 (7th Cir. 2001).  Furthermore, the Sun-Times reliance on *dicta*

34

from *Near v State of Minnesota ex rel. Olson*, does not escape the fact that the obtainment and publication violated the DPPA in the first place.  283 U.S. 697, 713 (1931).  In fact, that same *dicta* clarifies that when stating that if a "previous restraint is permissible, it may be imposed at once; indeed, the wrong may be as serious in one publication as in several."  *Id.*

The Sun-Times' claim that forcing them to remove this information would be a prior restraint is thus misguided.  As established above, the DPPA is *at most* a content neutral regulation that has the potential to limit free expression.  Therefore, any analysis as to whether it violates the First Amendment as a prior restraint would be inappropriate.  More importantly, however is the fact that any order that would force the Sun-Times to remove or redact the Officers' information from its website would not deny the Sun-Times use of a forum in advance of the actual expression.  The information that is causing the Officers' injury *has already been published*.  This is another attempt by the Sun-Times to use the First Amendment in order to shield itself from liability.  Accordingly, ordering the Sun-Times to remove the Officers' information from its website does not constitute a prior restraint.

## CONCLUSION

The Sun-Times violated the DPPA when it obtained and published the Officers' personal information.  The DPPA definition of protected "personal information" includes full names, including middle initials and suffixes, heights and weights, eye and hair colors, and months and years of birth.  Additionally, the DPPA, facially or as applied, does not violate the First Amendment.  Finally, ordering the Sun-Times to remove the Officers' personal information from its website would not constitute a prior restraint under the First Amendment.  Accordingly, this honorable Court  affirm the district court's orders denying the Sun-Times' motion to dismiss the Officers' complaint.

Respectfully submitted,


Dated: August 22, 2014                    s/ *Sean C. Starr*
                                          Law Offices of Sean C. Starr
                                          135 South LaSalle Street, Suite 3300
                                          Chicago, IL 60603
                                          (312) 609-0060
                                          Atty No. 6304070
                                          Attorney for Plaintiffs-Appellees


                                          s/ *Ronald C. Dahms*
                                          Law Offices of Ronald C. Dahms
                                          135 South LaSalle Street, Suite 3300
                                          Chicago, IL 60603
                                          (312) 609-0060
                                          Atty No. 6289304
                                          Attorney for Plaintiffs-Appellees

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7)</u>

I hereby certify that this brief complies with the rules and type-volume limitations

contained in Fed. R. App. P. 32(a)(7) for a brief produced with a proportionally spaced font.  The

length of this brief is 11,474 words.


Dated: August 22, 2014                          s/ *Ronald C. Dahms*
                                                Ronald C. Dahms
                                                Sean C. Starr
                                                Attorneys for Plaintiffs-Appellees
                                                135 South LaSalle Street, Suite 3300
                                                Chicago, IL 60603

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2014, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the

CM/ECF system in accordance with Fed. R. App. P. 25(d).  I certify that all participants in the

case are registered CM/ECF users and that service will be accomplished by the CM/ECF system


Damon E. Dunn, Esq.
Seth A. Stern, Esq
Funkhouser Vegosen Liebman & Dunn Ltd.
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603

United States Attorney General
Department of Justice Room B-103
950 Pennsylvania Ave. NW
Washington, DC 20540-0001

James A. Klenk, Esq.
Samuel Fifer, Esq.
Natalie J. Spears, Esq.
Gregory R. Naron, Esq.
Kristen C. Rodriguez, Esq.
Dentons US LLP
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606


Dated: August 22, 2014                          s/ *Ronald C. Dahms*
                                                Ronald C. Dahms
                                                Sean C. Starr
                                                Attorneys for Plaintiffs-Appellees
                                                135 South LaSalle Street, Suite 3300
                                                Chicago, IL 60603
                                                Atty No. 6289304